## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SADIE BENNETT AND MELISSA MANNINO, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | CIVIL ACTION |
| V. | 19-185-SDD-RLB |
| LOUISIANA HEALTH SERVICE & INDEMNITY COMPANY (doing business as BLUE CROSS BLUE SHIELD OF LOUISIANA) | (UNDER SEAL) |

### RULING

This matter is before the Court on a *Motion for Summary Judgment*[1] filed by Defendant, Louisiana Health Service & Indemnity Company d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA"). Plaintiffs, Sadie Bennett and Melissa Mannino ("Plaintiffs"), filed an *Opposition and Cross-Motion for Partial Summary Judgment*.[2] BCBSLA replied and opposed[3] Plaintiffs' *Cross-Motion*, and Plaintiffs filed a *Reply*.[4] For the following reasons, the Court finds that BCBSLA's *Motion* should be GRANTED, and Plaintiffs' *Cross-Motion* should be DENIED.

**I.    BACKGROUND**

Plaintiffs are participants in group health plans ("the Plans")[5] that are insured and administered by BCBSLA and sponsored by Plaintiffs' employer, Mannino's Family Practice Pharmacy.[6] Under most group health plans, when a participant fills a prescription

---

[1] Rec. Doc. 99.
[2] Rec. Doc. 102.
[3] Rec. Doc. 109.
[4] Rec. Doc. 112.
[5] Both parties refer generally to the "Plan" or "Plans" throughout their briefing. The plural and singular are used interchangeably. No explanation is provided. The Court will refer to the subject group health plans as the "Plan" or "Plans" as appropriate.
[6] Rec. Doc. 87, p. 1.

for a medically-necessary prescription drug, the insurer pays a portion of the cost and the participant in the health plan pays a portion of the cost. The participant's cost-sharing payment is made directly to the pharmacy, who collects the payment on behalf of the insurer.[7] The cost of the prescription drug is pre-determined by the terms of the governing health plan and is usually at a lower or negotiated cost.

Plaintiffs claim that BCBSLA violated the Plans' terms and overcharged participants for medically-necessary prescription drugs. They claim that BCBSLA caused pharmacies to "misrepresent" the cost-sharing amounts for prescriptions and charge the Plaintiffs an amount in excess of the negotiated amount reflected in the Plans.[8] BCBSLA did not directly contract or negotiate any prices with the pharmacy in this case.[9] Instead, BCBSLA contracted with a Pharmacy Benefit Manager, Express Scripts, Inc. ("ESI"), who in turn contracted with the pharmacy.[10] Typically, the payment BCBSLA submits to ESI is greater than the payment ESI submits to the pharmacy. The difference between the amount ESI pays the pharmacy and the amount BCBSLA reimburses ESI is known as "the spread."[11] BCBSLA avers that pharmacy benefit managers such as ESI will collect the spread as a fee for conducting business.[12]

Pursuant to its contract with BCBSLA, ESI made payments to the pharmacy and computed the "cost-share payment" (i.e. deductibles and coinsurance) that the pharmacy was to collect from plan participants, such as Plaintiffs.[13] ESI calculated the amount of cost-share payments to be collected from the participants using information supplied by

---

[7] Rec. Doc. 88, pp. 3–4.
[8] *Id.* at p. 4.
[9] Rec. Doc. 106, p. 12 (SEALED).
[10] *Id.*
[11] Rec. Doc. 106, p. 19 (SEALED).
[12] *Id.*
[13] Rec. Doc. 106, p. 12 (SEALED).

BCBSLA. The parties refer to this as the "plan rate."[14] Plaintiffs argue that relying on the "plan rate" to calculate cost-share payments was improper, as the Plans direct for cost-share amounts to be based on the discounted price negotiated between ESI and the pharmacy, or the "pharmacy rate." Plaintiffs claim BCBSLA artificially inflated costs and created a system of "overcharges" by forcing plan participants to pay the "plan rate" directly to the pharmacy instead of the "pharmacy rate."[15]

After discovering the alleged overcharges, Plaintiff Bennett sent a letter to BCBSLA on December 5, 2018 stating:

> Dear Blue Cross: I believe that our family was overcharged for prescription drugs throughout 2017 and 2018. Sadie Bennett was overcharged for [Drug A]. Rebecca Mannino was overcharged for [Drug X and Drug Y]. Melissa Mannino was overcharged for [Drug B], [Drug C], and [Drug D]. The Group Number is []2FF2 for Mannino's Pharmacy. Please reimburse our excess payments. Thanks.[16]

Both Plaintiffs would later testify that they intended the letter to be an appeal to BCBSLA, which they believed their Plans required in order to settle the alleged overcharges.[17] On January 17, 2019, BCBSLA responded to Bennett's letter with written correspondence stating, "In order to request reimbursement for prescription drugs, you must complete and submit a Prescription Drug Reimbursement claim form for each member to our pharmacy vendor Express Scripts. The pharmacy claim form is enclosed for your convenience."[18] Plaintiffs argue that a response to BCBSLA's correspondence was unwarranted.[19]

---

[14] *See* Rec. Doc. 106, pp. 39–41 (SEALED).
[15] *See* Rec. Doc. 88, pp. 6–7.
[16] Rec. Doc. 106, p. 9 (SEALED).
[17] Rec. Doc. 101-6, pp. 180–81 (SEALED); Rec. Doc. 101-7, pp. 67–68 (SEALED).
[18] Rec. Doc. 106, p. 11 (SEALED).
[19] *See id.*

Therefore, Plaintiffs made no further attempts to address the alleged overcharges with BCBSLA before filing the instant litigation.[20]

The *Amended Complaint*[21] alleges four counts against BCBSLA for violations of the Employee Retirement Income Security Act of 1974 ("ERISA"): Count I is brought under ERISA § 502(a)(1)(b)[22] for the alleged prescription drug overcharges in violation of the terms of the Plans; Count II is brought under ERISA § 502(a)(3)[23] against BCBSLA in its roles as a "fiduciary" and "party in interest" for allegedly misusing Plan assets to effectuate the overcharges for prescription drugs and benefiting from the resulting compensation; Count III is brought under ERISA § 502(a)(3)[24] against BCBSLA in its role as "fiduciary" for dealing in Plan assets for its own interest and for misappropriating its authority to implement and benefit from the system of overcharges; and Count IV is brought under ERISA § 502(a)(2)[25] and § 502(a)(3)[26] for BCBSLA's breach of fiduciary duties in setting the amount of and charging overcharges in violation of the terms of the Plans.

BCBSLA now moves for summary judgment arguing that Plaintiffs did not satisfy the prerequisite to ERISA claims of properly exhausting administrative remedies before filing suit.[27] It claims the counts of Plaintiffs' *Amended Complaint* are duplicitous, thus all counts against BCBSLA should be dismissed for failure to exhaust. Alternatively,

---

[20] Rec. Doc. 106, p. 11 (SEALED); Rec. Doc. 1.
[21] Rec. Doc. 88. Following the Court's *Ruling* denying BCBSLA's *Motion to Dismiss* (Rec. Doc. 49) and further discovery by the parties, Plaintiffs amended their original *Complaint* (Rec. Doc. 1) to remove, in part, the allegation that BCBSLA "clawed back" or recouped the alleged overcharges from the pharmacies.
[22] 29 U.S.C. § 1132(a)(1)(b).
[23] 29 U.S.C. § 1132(a)(3).
[24] *Id.*
[25] 29 U.S.C. § 1132(a)(2).
[26] 29 U.S.C. § 1132(a)(3).
[27] Rec. Doc. 99; Rec. Doc. 100; Rec. Doc. 101 (SEALED).

BCBSLA claims that even if Plaintiffs exhausted their administrative remedies, the proper procedure is to remand this matter to the Plan Administrator. In the further alternative, it asserts that a *de novo* review of this matter will show that Plaintiffs were not overcharged at all.[28]

Plaintiffs oppose these reasons for summary dismissal and argue in their *Cross-Motion for Partial Summary Judgment* that the following be deemed established for the trial of the case:

> Until May 1, 2022, the BCBS health plans covering Plaintiffs (the "plans") required that deductible and coinsurance payments to purchase drugs from Participating Pharmacies be based on the discounted prescription drug price that BCBS's pharmacy benefit manager, Express Scripts, Inc., negotiated with Participating Pharmacies (the "pharmacy rate"). Specifically, under the plans, deductible payments may not exceed the pharmacy rate and coinsurance payments must be the product of the pharmacy rate and the applicable coinsurance percentage rate.[29]

They claim the Plans unambiguously provide that deductible and coinsurance payments paid directly to the pharmacy must be based on the "pharmacy rate," and BCBSLA cannot exercise discretion to interpret the Plans' language differently.[30]

## II.    LAW & ANALYSIS

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[31] "When assessing whether a dispute to any material fact exists, we consider all of the evidence in the record but refrain from making credibility determinations or weighing

---

[28] Rec. Doc. 101, p. 3 (SEALED).
[29] Rec. Doc. 102. *See* Rec. Doc. 103; Rec. Doc. 104 (SEALED); Rec. Doc. 105; Rec. Doc. 106 (SEALED); Rec. Doc. 107; Rec. Doc. 108 (SEALED).
[30] *See* Rec. Doc. 104, p. 10 (SEALED); Rec. Doc. 111, p. 6 (SEALED).
[31] Fed. R. Civ. P. 56(a).

the evidence."[32] A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[33] If the moving party satisfies its burden, "the non-moving party must show that summary judgment is inappropriate by setting 'forth specific facts showing the existence of a genuine issue concerning every essential component of its case.'"[34] However, the non-moving party's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence."[35]

Notably, "[a] genuine issue of material fact exists, 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"[36] All reasonable factual inferences are drawn in favor of the nonmoving party.[37] However, "[t]he Court has no duty to search the record for material fact issues. Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports his claim."[38] "Conclusory allegations unsupported by specific facts . . . will not prevent the award of summary judgment; 'the plaintiff [can]not rest on his allegations . . . to get to a jury without "any significant probative evidence tending to support the complaint."'"[39]

---

[32] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008).
[33] *Guerin v. Pointe Coupee Par. Nursing Home*, 246 F.Supp.2d 488, 494 (M.D. La. Jan. 10, 2003) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986)).
[34] *Rivera v. Houston Indep. Sch. Dist.,* 349 F.3d 244, 247 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).
[35] *Willis v. Roche Biomedical Labs., Inc.,* 61 F.3d 313, 315 (5th Cir. 1995) (quoting *Little*, 37 F.3d at 1075).
[36] *Pylant v. Hartford Life and Accident Ins. Co.*, 497 F.3d 536, 538 (5th Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).
[37] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985).
[38] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[39] *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249).

### B. <u>BCBSLA'S Motion for Summary Judgment</u>

1. **Count 1: ERISA § 502(a)(1)(b) claim**

A participant in an employee benefit plan covered by ERISA,[40] may bring a civil action under § 502(a)(1)(B) to recover benefits due under the terms of the plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan.[41] The Fifth Circuit requires participants to exhaust the administrative remedies under the plan before filing suit to recover benefits.[42] In opposing summary judgment, Plaintiffs argue that their claims are not covered by the Plans' administrative remedies, thus, "there was nothing to exhaust."[43] Alternatively, they claim they are exempt from the exhaustion prerequisite because exhaustion would be futile. In the further alternative, Plaintiffs claim that if they were required to exhaust their administrative remedies, then the record shows they successfully satisfied this requirement.[44] These arguments are unsupported by the law and evidence presented.

### a. *Exhaustion requirement*

It is undisputed that for ERISA Members such as Plaintiffs, the Plans state, "[T]he Member is required to complete the first level of Appeal prior to instituting any civil action under ERISA section 502(a)."[45] Plaintiffs claim they were reasonably justified in believing an appeal was unnecessary because the alleged overcharges of cost-shares do not fall within the Plans' categories for appeal. Per the Plan, "Administrative Appeals involve contractual issues, Rescissions of Coverage, and Adverse Benefit Determinations which are

---

[40] 88 Stat. 829, as amended, 29 U.S.C. § 1001 *et seq.*
[41] 29 U.S.C. § 1132(a)(1)(B).
[42] *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1018 (5th Cir. 2009).
[43] Rec. Doc. 104, p. 10 (SEALED).
[44] *Id.*
[45] Rec. Doc. 106, p. 7 (SEALED).

not related to Medical Necessity, appropriateness, healthcare setting, level of care, effectiveness or treatment . . . ."[46] Plaintiffs deny that the alleged overcharges fit within the definition of "Adverse Benefit Determination."[47] They further argue that BCBSLA's alleged policy of wrongdoing should not be considered a "contractual issue," as that term should be interpreted as referencing "Adverse Benefit Determination" as well.

The evidence presented on summary judgment contradicts these assertions. Notwithstanding the arguments appearing in Plaintiffs' briefs that the December 5, 2018 letter was filed "out of an abundance of caution," the deposition transcripts presented by BCBSLA reflect that Plaintiffs understood the Plans as requiring an administrative appeal prior to filing suit.[48] Plaintiffs testified that the letter submitted to BCBSLA on December 5, 2018 was intended to satisfy the appeal requirement denoted in the Plan.[49] Thereafter, they filed suit asserting, "Plaintiffs and the Class are entitled to enforce their rights under the terms of the plans and seek clarification of their future rights"—language that tracks § 502(a)(1)(B).[50]

But, regardless of Plaintiffs' understanding of the Plan's language, exhaustion remains a prerequisite to filing suit in this Court.[51] "A plaintiff must exhaust an

---

[46] *Id.* at p. 6 (SEALED).
[47] Rec. Doc. 104, p. 19 (SEALED).
[48] Plaintiffs' deposition testimony is summary judgment evidence on this issue; mere subsequent allegations presented in a brief prepared by counsel do not create a genuine issue for trial such to preclude summary judgment. Fed. R. Civ. P. 56 (A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record); *see also Hawking v. Ford Motor Credit Co.,* 210 F.3d 540, 545 (5th Cir. 2000); *Nat'l Ass'n of Gov't Emps. v. City Pub. Serv. Bd. of San Antonio, Tex.*, 40 F.3d 698, 713 (5th Cir. 1994).
[49] Rec. Doc. 101-6, pp. 180–81 (SEALED); Rec. Doc. 101-7, pp. 67–68 (SEALED).
[50] Rec. Doc. 88, p. 37, ¶126.
[51] *Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 105 (2013) ("The courts of appeals have uniformly required that participants exhaust internal review before bringing a claim for judicial review under § 502(a)(1)(B)."); *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir. 2000); *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1300 (5th Cir.1985); *Batchelor v. Int'l Broth. of Elec. Workers Local 861 Pension and Retirement Fund*, 877 F.2d 441, 444 n. 10 (5th Cir.1989)); *Hall v.*

administrative remedy available under an ERISA plan, even if that remedy is phrased permissively. Moreover, 'plaintiffs seeking ERISA plan benefits are bound by the plan's administrative procedures and must use them before filing suit even if they have no notice of what those procedures are.'"[52] The Fifth Circuit has explained the policies behind the exhaustion requirement as, "upholding Congress's desire that ERISA trustees and not the federal courts be responsible for the actions of plan administrators, providing a clear record of administrative action if litigation ensues, and allowing judicial review of fiduciary action or inaction under the abuse of discretion standard, where applicable, rather than *de novo*."[53] Additional purposes of the exhaustion prerequisite include: minimizing the number of frivolous ERISA suits, promoting the consistent treatment of benefit claims, providing a nonadversarial dispute resolution process, and decreasing the time and cost of claims settlement.[54] Plaintiffs' interpretation of the Plan language does not negate the exhaustion requirement.

### b. Futility doctrine

Under certain circumstances, "plaintiffs in an ERISA case are not required to exhaust their remedies if doing so would be futile."[55] However, the Fifth Circuit has held that a plaintiff's "failure to show hostility or bias on the part of the administrative review

---

*Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir.1997) ("The exhaustion doctrine is applicable to suits brought under ERISA.")

[52] *Wright v. Louisiana Corrugated Products, LLC*, 59 F.Supp.3d 767, 778 (W.D. La. Nov. 7, 2014) (citing *Bourgeois*, 215 F.3d at 480); see also *Long v. Aetna Life Ins. Co.*, CIV.A. 14-403, 2014 WL 4072026, at *4 (E.D. La. Aug. 18, 2014); *Clancy v. Employers Health Ins. Co.*, 82 F.Supp.2d 589, 599 (E.D. La. Nov. 24, 1999), *aff'd*, 248 F.3d 1142 (5th Cir. 2001) (citing *Denton v. First National Bank of Waco, Texas*, 765 F.2d 1295 (5th Cir.1985)).

[53] *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479, n. 4 (5th Cir. 2000) (citing *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295, 1300 (5th Cir.1985).

[54] *Hall v. Nat'l Gypsum Co.*, 105 F.3d 225, 231 (5th Cir.1997).

[55] *Harris v. Trustmark Nat. Bank*, 287 Fed.Appx. 283, 294 (5th Cir.2008); see *Bourgeois v. Pension Plan for Emps. of Santa Fe Int'l Corps.*, 215 F.3d 475, 479 (5th Cir.2000); see also, *McGowin v. ManPower Int'l, Inc.*, 363 F.3d 556, 559 (5th Cir.2004)

committee is fatal to a claim of futility."[56] Plaintiffs do not make such a showing. Instead, they assert that the exhaustion requirement presupposes a plan is capable of providing the relief sought and argue their claims cannot be resolved by an administrative appeal because: 1) BCBSLA does not know the pharmacy rate, and 2) Plaintiffs would be appealing a company-wide policy that applies to all members.

This matter is distinguishable from the cases Plaintiffs rely on to show an administrative appeal cannot remedy BCBSLA's alleged wrongdoing. Addressing the exhaustion doctrine, the Fifth Circuit affirmed that the plaintiff in *Chailland v. Brown & Root* did not have to pursue the appeal procedures of his Employment Retirement and Savings Plan before suing his former employer for wrongful termination.[57] "Our cases applying this common law exhaustion requirement presuppose that the grievance upon which the lawsuit is based arises from some action of a plan covered by ERISA, and that the plan is capable of providing the relief sought by the plaintiff."[58] The plaintiff alleged his termination was motivated by the employer's desire to prevent him from reaching an employment milestone and receiving greater benefits under the company's Employment Retirement and Savings Plan. Because the "sole grievance" in the case was with the employer's decision—not a decision by the Employment Retirement and Savings Plan—the Fifth Circuit found the lawsuit did not involve any action of an ERISA plan nor could the plan's administrative remedies redress the employer's allegedly wrongful conduct.[59]

Here, however, the grievance upon which this lawsuit is based directly arises from action of a plan covered by ERISA, and Plaintiffs have not shown the Plan is incapable

---

[56] *Id.*
[57] *Chailland v. Brown & Root, Inc.*, 45 F.3d 947 (5th Cir.1995).
[58] *Id.* at 950.
[59] *Id.*

of providing the relief they seek. Arguing that BCBSLA lacks knowledge of the "pharmacy rate" does not address the myriad of additional ways the dispute may be resolved via administrative appeal. The assertion that addressing a "company-wide policy" renders exhaustion futile, without more, is likewise unsupported by law.[60]

To fall within the futility doctrine, Plaintiffs must prove "that it is certain that their claim will be denied on appeal, not merely that they doubt an appeal will result in a different decision."[61] The Court previously directed the parties to conduct additional discovery to determine whether following administrative procedures would be futile.[62] Despite this period of discovery, Plaintiffs fail to demonstrate futility. Plaintiffs were required to exhaust the Plan's administrative remedies before filing suit under ERISA. Accordingly, the Court turns to whether Plaintiffs adequately exhausted those remedies.

### c. Administrative appeal

BCBSLA argues that Plaintiff Bennett's letter from December 5, 2018 is not a valid appeal under the Plan. The Court agrees. The letter meets the Plan's requirement of a "written request from a member." However, the notion that this is sufficient to constitute exhaustion of administrative remedies is contrary to established Fifth Circuit precedent.

---

[60] *Sibley-Schreiber v. Oxford Health Plans (N.Y.), Inc.*, 62 F.Supp.2d 979, 988 (E.D.N.Y.1999) (stating that while an allegation of futility is not satisfied by the mere showing that a claim was denied when initially presented, it is "fair" to question whether it makes sense to require insureds to jump through procedural hoops on their way to an inevitable denial of coverage in the face of a company-wide promulgation of limited or no coverage, but also noting the extensive measures taken by plaintiffs to seek reconsideration and an explanation of denial of coverage after defendants consistently denied coverage.); *Schwab v. MedFirst Health Plans of Louisiana*, CIV.A. 99-2695, 2000 WL 364984, at *4 (E.D. La. Apr. 7, 2000) (holding that requiring a plaintiff to exhaust a third level of administrative remedies would be futile when the plaintiff already exhausted multiple levels of the grievance procedure as provided for in the plan at issue, the plaintiff's claim had already been considered and rejected by a higher authority than the Grievance Manager, and the grievance was based on a corporate policy decision which realistically would not be reversed via an individual grievance.)

[61] *Communications Workers of America v. American Tel. & Tel. Co.*, 40 F.3d 426, 432 (D.C.Cir.1994); *Schwab v. MedFirst Health Plans of Louisiana*, CIV.A. 99-2695, 2000 WL 364984, at *4 (E.D. La. Apr. 7, 2000); *Kaler v. Metro. Life Ins. Co.*, CIV. A. 99-2211, 2000 WL 782072, at *5 (E.D. La. June 16, 2000).

[62] *See* Rec. Doc. 49.

In *Swanson v. Hearst Corp. Long Term Disability Plan*, Swanson's counsel sent a letter to Hartford Life Insurance notifying the insurer of Swanson's intention to appeal Hartford's decision to terminate her benefits under her plan, requesting various documents from the plan, and asking Hartford to provide counsel with notice of further deadlines.[63] The Fifth Circuit affirmed that the letter was insufficient to satisfy the administrative exhaustion requirement, as it "included no factual or substantive arguments, and no evidence. There was accordingly nothing for Hartford to consider on appeal."[64]

Similarly, the Court held that the claimant in *Piecznski v. Dril-Quip, Inc. Long Term Disability Plan* "failed to exhaust available administrative remedies" by way of a letter expressing his intention to appeal the decision to deny his long-term disability benefits, requesting additional documents, and requesting notice of any deadlines under the plan.[65] The Fifth Circuit found Piecznski's correspondence was not a valid appeal letter. Like Plaintiff Bennett's submission to BCBSLA, Piecznski's letter did not include the reasons he believed his claim was improperly denied, and he did not submit any additional comments, documents, records or other information relating to the claim so that the Plan could give his appeal proper consideration.[66] "As in *Swanson,* there was nothing for the Plan to consider on appeal and no basis to require the Plan to issue a decision within 45 days of receiving Piecznski's letter."[67]

Here, Plaintiffs note that the Plans only "encourage" participants to provide BCBSLA with "all available information to help [BCBSLA] completely evaluate the Appeal

---

[63] *Swanson v. Hearst Corp. Long Term Disability Plan*, 586 F.3d 1016, 1017 (5th Cir.2009).
[64] *Id.* at 1019.
[65] *Piecznski v. Dril-Quip, Inc. Long Term Disability Plan*, 354 Fed. Appx. 207 (5th Cir.2009).
[66] *Id.* at 211.
[67] *Id.*

such as written comments, documents, records."[68] While providing additional documents is not explicitly required under the Plans, the Court finds that Bennett's December 5, 2018 letter is substantively devoid of sufficient information for BCBSLA to consider on appeal. Other than asserting Bennett's "belief" that her family was overcharged for certain prescription drugs "throughout 2017-2018," the letter "contain[s] no facts, no argument and no evidence on which an appeal could be considered."[69] There is no basis to require the Plan to issue a decision within 30 days of receiving Bennett's letter. Plaintiffs failed to exhaust their administrative remedies before filing suit. The claims against BCBSLA under Count 1 of the *Amended Complaint* are summarily dismissed.

### 2. Counts II, III, and IV: ERISA § 502(a)(2) and § 502(a)(3)

BCBSLA moves for summary dismissal of the § 502(a)(2) and § 502(a)(3) claims found in Counts II, III, and IV of the *Amended Complaint* as being impermissibly duplicative of Plaintiffs' § 502(a)(1)(B) claim. "Equitable relief under ERISA is normally unavailable 'where Congress elsewhere provided adequate relief for a beneficiary's injury.'"[70] Plaintiffs argue that ERISA § 502(a)(1)(B) does not provide the equitable relief sought in Counts II – IV of the *Amended Complaint*. However, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used."[71]

The Court previously denied BCBSLA's *Motion to Dismiss* the allegedly duplicative claims in favor of providing Plaintiffs with an opportunity to discover and explore the

---

[68] Rec. Doc. 106, p. 8 (SEALED).
[69] *Id.* at p. 9 (SEALED); *Sanghani v. Aetna Health Ins. Co.,* CIV.A. 12-631, 2013 WL 5839156, at *2 (W.D. La. Oct. 29, 2013).
[70] *Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir.2017) (quoting *Varity Corp. v. Howe*, 516 U.S. 489, 515, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996)).
[71] *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 733 (5th Cir. 2018) (quoting Geralds v. Entergy Servs. Inc., 708 F.3d 448, 452 (5th Cir. 2013).

potential variation in injuries and recovery sought.[72] Following this period of discovery, Plaintiffs narrowed the allegations in their *Complaint* to allege a single theory of liability: BCBSLA misapplied the Plan's terms and caused Plan participants to be overcharged for prescription medications.[73] The essence of the *Amended Complaint* is that Plaintiffs were injured by BCBSLA violating the terms of a Plan governed by ERISA.

The remedy for the injury in Counts II, III, and IV of the *Amended Complaint* exists via Plaintiffs' § 502(a)(1)(B) claim. Because ERISA's civil enforcement provision provides a direct mechanism to address the injury for which Plaintiffs seek equitable relief, they cannot assert a separate ERISA claim for breach of fiduciary duty.[74] Accordingly, the claims in Counts II, III, and IV of the *Amended Complaint* are dismissed.

### C. Plaintiffs' Cross-Motion for Summary Judgment

Having found that Plaintiffs failed to satisfy the exhaustion prerequisite to their ERISA claims before filing suit and that the remaining claims in the *Amended Complaint* are duplicative of Plaintiffs' § 502(a)(1)(B) claim, the Court will deny Plaintiffs' *Cross-Motion for Summary Judgment*.[75]

---

[72] *See* Rec. Doc. 63.
[73] *See* Rec. Doc. 88.
[74] *Swenson v. United of Omaha Life Ins. Co.*, 876 F.3d 809, 812 (5th Cir. 2017) (citing *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610 (5th Cir. 1998)).
[75] Rec. Doc. 102.

## III.    CONCLUSION

For the foregoing reasons, BCBSLA's *Motion for Summary Judgment*,[76] is GRANTED and the claims of Plaintiffs, Sadie Bennett and Melissa Mannino are hereby DISMISSED WITH PREJUDICE. Plaintiffs' *Cross-Motion for Partial Summary Judgment*[77] is hereby DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this 23rd day of March, 2023.

_____
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[76] Rec. Doc. 99.
[77] Rec. Doc. 102.